IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

COUY GRIFFIN,

     Plaintiff,

v.                                                                     Civ. No. 22-0362 KG/GJF

MARCO WHITE, MARK MITCHELL,
and LESLIE LAKIND, *acting under color of
New Mexico law*,

     Defendants.

MEMORANDUM OPINION AND ORDER

Plaintiff Couy Griffin (Griffin) filed a Motion for Preliminary Injunction on May 18,

2022 (Motion), asking the Court to "enjoin Defendants from enforcing the *quo warranto* statute

against [him]." (Doc. 20) at 24. The Court construes this as a request to enjoin a collateral state

court proceeding, *White v. Griffin*, D-101-CV-2022-00473, proceeding in New Mexico's First

Judicial District Court (*Quo Warranto* Action). Defendants Marco White, Mark Mitchell, and

Leslie Lakind (collectively, "Defendants"), who are relator-plaintiffs in the *Quo Warranto*

Action, filed their Response on May 27, 2022. (Doc. 21). With leave of Court, Griffin filed a

Reply on June 2, 2022, and Defendants filed a Supplemental Brief on June 10, 2022. (Docs. 27,

28). At Griffin's request, the Court set the matter for oral argument and set an in-person hearing

on June 30, 2022. (Doc. 29). In setting that hearing, the Court advised the parties of eight (8)

broad topics the Court wished to address, not all of which were explicitly covered in the briefing.

However, Griffin filed a motion for leave to have his counsel appear remotely or to rest on his

briefs. (Doc. 33). While the Court denied that motion, (Doc. 35), the Court has reconsidered

and now accepts Griffin's request to rest on the briefs. In so reconsidering, and after examining

the briefs and the record, the Court has determined to honor Griffin's request for a decision on the briefs without oral argument.

Having considered the briefing and the applicable law, and being otherwise fully advised in these matters, the Court finds Griffin's Motion is not well-taken and is hereby denied. The June 30, 2022, hearing is hereby vacated. Moreover, the Court concludes it lacks Article III jurisdiction and dismisses this case without prejudice.

I.      INTRODUCTION

Understanding this case requires a brief description of three related proceedings: the *Quo Warranto* Action; Chief Judge Johnson's Order of Remand in *White v. Griffin*, Cause No. 22-cv-0284 WJ/JFR ("*White*"); and the instant complaint and briefing.

White, Mitchell, and Lakind are Defendants in this case but are plaintiffs in the *Quo Warranto Action*. They filed a 34-page Complaint for *Quo Warranto* Relief on March 21, 2022, detailing Griffin's involvement and participation in the January 6, 2021, events that transpired at the U.S. Capitol[1] and arguing that: Griffin is disqualified from public office under Section Three of the Fourteenth Amendment; the events of January 6, 2021, constituted an "insurrection"; and Griffin "engaged in" an insurrection and/or gave "aid or comfort" to insurrectionists. *White*, 22-cv-0284 ECF No. 1-1 at 4, 7-39. They asked the state district court to declare: 1) the events of January 6, 2021, constitute an "insurrection" within the meaning of Section Three of the Fourteenth Amendment; 2) Griffin engaged in the insurrection and/or gave aid or comfort to the insurrections; and 3) Griffin is, therefore, disqualified from office. *Id.* at 38. They further asked the state district court to remove Griffin from his current position, enjoin him from performing

---

[1] Referring to the series of events that occurred when protestors and rioters stormed the U.S. Capitol while Congress was in session to formally count the electoral votes from the 2020 Presidential Election, thereby certifying the victory of President Joe Biden.

any official acts in his current capacity, and prohibit from holding any future state or federal

office. *Id.* at 39.

Griffin removed the *Quo Warranto* Action to federal court on April 17, 2022, asserting

federal question jurisdiction. *White*, 22-cv-0284 ECF No. 1. The plaintiffs timely filed a Motion

to Remand on April 20, 2022, asserting that they lacked Article III standing and that the court

lacked federal-question jurisdiction. *White*, 22-cv-0284 ECF No. 10. In response, Griffin argues

that the plaintiffs had relator standing and that, as relators, plaintiffs were "legal agents of the

State" and "stand in a fiduciary relationship with the State with respect to this litigation." *White*,

22-cv-0284 ECF No. 15 at 10, 12.

Having considered all the briefing, *White*, 22-cv-0284 ECF Nos. 10, 15, and 23, Chief

Judge Johnson granted the motion to remand by Memorandum Opinion and Order on May 27,

2022, *White*, 22-cv-0284 ECF No. 33. In remanding the *Quo Warranto* Action to state court,

Chief Judge Johnson found that White, Mitchell, and Lakind lacked Article III standing to

proceed in federal court. *Id.* In making this finding, Chief Judge Johnson found that plaintiffs

"have not suffered an individualized injury capable of satisfying the injury-in-fact prong" for

standing. *Id.* at 3. That analysis turned on the language of the *quo warranto* statute and the

nature of rights assigned to relators. *Id.* at 3-8. Critically, Chief Judge Johnson found that "the

*quo warranto* statute mandates no role whatsoever for the State of New Mexico" in the *Quo

Warranto* Action and "New Mexico retains no mechanism for controlling the litigation,

intervening in the lawsuit, or objecting to a settlement or dismissal." *Id.* at 7. As such, Chief

Judge Johnson found that "no principal-agent relationship can exist" between those plaintiffs and

the State of New Mexico. *Id.* at 9.

The day after briefing was completed on the *White* motion to remand, Griffin filed his Verified Complaint for Declaratory and Injunctive Relief in this case. (Doc. 1). Griffin sued White, Mitchell, and Lakind as "acting under color of New Mexico law," and no other defendants. *Id.* He brings three claims: Count I brings claims for civil rights violations pursuant to 42 U.S.C. § 1983, on the basis that Section Three of the Fourteenth Amendment no longer has any application following the Amnesty Act of 1872, and New Mexico's *quo warranto* statute, NMSA 1978, § 44-3-4, cannot rest on a misapplication of federal law, ergo it would violate his First Amendment right to run for and hold political office were the *Quo Warranto* Action to succeed; Count II brings claims pursuant to 42 U.S.C. § 1983 for violations of his Fourteenth Amendment right to due process on the basis that Defendants allege he bears the burden of proof in the *Quo Warranto* Action, which is currently proceeding in state court; and Count III argues that Section Three of the Fourteenth Amendment has little force or effect following the Amnesty Act of 1872, and would not apply to him anyway, by its terms. (Doc. 1). Griffin asks this Court to: 1) declare that the *quo warranto* statute, as applied to disqualification of an officeholder under Section Three of the Fourteenth Amendment, violates his First Amendment right to run for political office; 2) declare that the *quo warranto* statute, as applied to disqualification of an officeholder under Section Three of the Fourteenth Amendment, violates the Due Process Clause of the Fourteenth Amendment by shifting the burden of proving a negative to him; 3) declare that application of Section Three of the Fourteenth Amendment to him is prohibited by federal law; 4) preliminarily and permanently enjoin Defendants from enforcing the *quo warranto* statute against him and disqualifying him from running for State and federal office; 5) award all costs and expenses of bringing this action, including attorney's fees; and 6) for such other relief as the Court deems appropriate. *Id.* at 10-11.

Griffin filed the instant Motion on May 18, 2022, (Doc. 20), pursuant to the Court's

Order Setting Briefing Schedule, (Doc. 14).  The Court rejected Count III, with respect to the

Amnesty Act of 1872, as a basis for a preliminary injunction by Memorandum Opinion and

Order on June 14, 2022.  (Doc. 30).

II.     DISCUSSION

This Motion, implicitly and explicitly, presents complicated questions of federal law and

comity.  The Court begins, as it must, by analyzing whether it has jurisdiction to hear the case at

all.  Upon its independent evaluation of Article III jurisdiction, including standing and ripeness,

the Court concludes it lacks Article III jurisdiction and must dismiss the case.  Assuming,

*arguendo*, that the Court has Article III jurisdiction to hear the case, the Court evaluates whether

any abstention doctrines apply that counsel against proceeding on the merits.  After thorough

briefing and oral argument, the Court concludes that *Pullman* abstention applies, such that the

Court should not and will not hear the case at this time.  Therefore, even if the Court did not

dismiss the case for lack of jurisdiction, it dismisses the case without prejudice pending

resolution of the *Quo Warranto* Action.  Even if the Court has jurisdiction and does not abstain,

the Court evaluates whether issue preclusion applies related to Chief Judge Johnson's Order of

Remand in *White*, 22-cv-0284.  The Court concludes that neither the rule against claim-splitting

nor issue preclusion applies.[2]  Should the Court reach the merits, Griffin's Motion fails on the

merits because he did not establish the likelihood of irreparable harm.  The Motion is, therefore,

denied.  The Court addresses each issue in turn.

---

[2] On June 27, 2022, Defendants filed a Notice of Withdrawal of Claim-Splitting Argument.
(Doc. 34).  The Court agrees that rule against claim-splitting does not apply, accepts Defendants'
withdrawal, and will not discuss the matter further in this Memorandum Opinion and Order.

A. *Standing*

Federal courts have "an independent obligation to determine whether subject-matter

jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*,

546 U.S. 500, 514 (2006); *Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv. II, LLC*, 887 F.3d

1003, 1013 (10th Cir. 2018) (quoting same)). "No principle is more fundamental to the

judiciary's proper role in our system of government than the constitutional limitation of federal-

court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337

(quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (referencing U.S. CONST. Art. III, § 2)).

"'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they

have standing to sue.'" *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 408 (2013).

"Standing to sue is a doctrine rooted in the traditional understanding of a case or

controversy." *Spokeo*, 578 U.S. at 338. The "'irreducible constitutional minimum' of standing

consists of three elements." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

(1992). That is, "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to

the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable

judicial decision." *Id.* (quoting *Lujan*, 504 U.S. at 560-61). The "party invoking federal

jurisdiction[] bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v.

Dallas*, 493 U.S. 215, 231 (1990).

As explained below, Griffin failed to state an injury in fact and failed to show the alleged

injury is fairly traceable to the Defendants. Because Griffin failed to establish standing at both

of these prongs, the Court need not and does not analyze whether Griffin established

redressability. Griffin lacks standing to bring this lawsuit and this Court lacks Article III

6

jurisdiction to hear the case.[3]  For this reason, the Court denies Griffin's Motion and dismisses the case.

   a. Injury in Fact

  "To establish an injury in fact, a plaintiff must show that he . . . suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical." *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560).  As explained below, Griffin lacks standing at this initial prong because he failed to allege an injury in fact.

    i. Particularization

  A "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.  Here, Griffin alleges that his First Amendment right to run for office and his Fourteenth Amendment right to Due Process are at stake.  For purposes of standing, the Court finds Griffin appropriately asserted a "particularized" injury.

    ii. Concreteness

  While particularization "is necessary to establish injury in fact, . . . it is not sufficient.  An injury in fact must also be 'concrete.'" *Spokeo*, 578 U.S. at 339.  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist. *Id.* at 340 (citing Black's Law Dictionary 479 (9th ed. 2009).  That an injury must "concrete" does not mean it must be "tangible." *Id.*

  Griffin has not alleged an injury that actually exists.  Here, Griffin claims he *may* be removed from office *if* he loses the *Quo Warranto* Action.  This type of hypothetical injury is not *de facto* and, therefore, not concrete.  Accordingly, the Court finds Griffin failed to allege a

---

[3] The parties did not brief these jurisdictional questions.  Griffin cursorily raised standing in his Complaint. (Doc. 1).  Given the Court's concerns on this point, the Court notified the parties that it would hear oral argument on these matters. (Doc. 29).  However, Griffin indicated his desire to rest on the briefs unless his counsel could appear remotely, and Defendants did not object to this. (Doc. 33).  Therefore, the Court proceeds based on the record before it.

concrete injury, and thus failed to allege an injury in fact.  For this reason, he lacks standing to bring this lawsuit.

iii.   Actual or Imminent Injury

"Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper*, 568 U.S. at 409 (quoting *Lujan*, 504 U.S. at 565, n.2).  That is, "threatened injury must be *certainly impending* to constitute injury in fact," and "[a]llegations of *possible* future injury" are insufficient.  *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Here, Griffin predicates his claims on the outcome of the *Quo Warranto* Action.  That is, Griffin concedes he "*would be* removed from offices and barred from running for state or federal office in the future" *if* the *Quo Warranto* Action resolves against him.  (Doc. 1) at ¶ 24 (emphasis added).  Griffin argues that his "potential injury is not in any way hypothetical," but then couches his claims in conditional language: "[i]f . . . removed from office'; "potential disqualification"; *etc.  Id.* at ¶¶ 25-26.

Griffin's "argument rests on [his] highly speculative fear" that the state court will find he participated in an insurrection or rebellion, will determine he is disqualified by Section Three of the Fourteenth Amendment, will rule against him in the *Quo Warranto* Action, and the State of New Mexico will subsequently remove him from office and bar him from seeking future office. *Clapper*, 568 U.S. at 410; *see also Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009) (rejecting a standing theory premised on a speculative chain of possibilities); *Whitmore*, 495 U.S. at 157-60 (same).

For Griffin to state an actual injury at this point, with the *Quo Warranto* Action still pending in state court, he would have to persuade this Court that defending himself in state court against an action authorized by state statute unduly burdens his First and Fourteenth Amendment rights.  Griffin did not attempt to make such a showing, and instead assumes the *Quo Warranto* Action constitutes a *fait accompli.*

But defending oneself in a civil lawsuit does not, as a matter of course, constitute the "invasion of a legally protected interest."  It is not certain, or reasonably certain, how the *Quo Warranto* Action will proceed or resolve.  Griffin's asserted outcomes evince nothing more than fearful speculation of how the state court will view his prior conduct.  Thus, this Court is not persuaded.

At this point, Griffin has alleged only prospective, speculative, hypothetical injuries flowing from the *Quo Warranto* Action: speculative injuries that are not "certain" to materialize. Therefore, the Court finds Griffin failed to state an actual or imminent injury and thereby failed to allege an injury in fact.  For this reason, Griffin lacks standing to bring this lawsuit.

     b.  Fairly Traceable

Even if Griffin had stated an injury in fact, which he did not, he would lack standing on the independent basis that his purported injury is not "fairly traceable" to the "allegedly unlawful conduct" of which he complains.

The "allegedly unlawful conduct" at issue appears to be the Defendants' filing of the *Quo Warranto* Action.  However, Griffin then makes a logical leap unsupported by legal reality: he contends that, if successful, the *Defendants*, who are not government employees of any stripe, would remove him from office and bar him from running again.  Griffin is wrong.  If he loses the *Quo Warranto* Action, it will be a judge who ruled against him and an officer of the State of

New Mexico who will enforce that ruling.  That is, these Defendants have no authority to remove or bar Griffin from office: they simply invoked a state statute and initiated litigation to test Griffin's qualifications to hold office.  *C.f.*, *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532, 535 (2021) (emphasizing that *Ex Parte Young* allows parties "to seek judicial orders in federal court preventing *state executive officials* from *enforcing* state laws that are contrary to federal law" but not state judges or "all unnamed private persons who might seek to bring their own [private enforcement] suits") (emphasis added).  Any future injury, to wit, being removed or barred from office, would flow from a state officer and not these Defendants.

Accordingly, Griffin's purported (and speculative) injury is not "fairly traceable" to these Defendants.  For this reason, too, Griffin lacks standing to bring this lawsuit.

B. *Ripeness*

Even if the Court had Article III jurisdiction to hear this case, which it does not, the Court would lack jurisdiction on ripeness grounds.[4]  *Park Lake Res., L.L.C. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1135 (10th Cir. 2004) ("Ripeness is a jurisdictional issue.").  For this reason, too, the Court must dismiss this case.

Even when a case satisfies the Article III "case or controversy" requirements, courts may still decline to render an opinion under the prudential ripeness doctrine.  *United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019).  Like standing, ripeness "bears on a court's subject matter jurisdiction under the case or controversy clause of Article III of the United States Constitution." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498-99 (10th Cir. 1995).  The plaintiff bears the burden of alleging "facts demonstrating the appropriateness of invoking

---

[4] A ripeness ruling "does not necessarily hold for all time.  Things ripen." *Park Lake*, 378 F.3d at 1137.  Griffin may seek to reopen this case or file a second action if the jurisdictional issues resolve.

judicial resolution of the dispute." *Id.* (citing *Renne v. Geary*, 501 U.S. 312, 317 (1991)). "The purpose of the ripeness doctrine is to prevent the premature adjudication of abstract claims." *Cabral*, 926 F.3d at 693 (quoting *Tex. Brine Co. v. Occidental Chem. Corp.*, 879 F.3d 1224, 1229 (10th Cir. 2018)).

The ripeness doctrine turns on two factors: first, "the fitness of the issue for judicial review," and second, "the hardship to the parties from withholding review." *Id.* (quoting *United States v. Bennett*, 823 F.3d 1316, 1326 (10th Cir. 2016). "As for whether the issue is fit for judicial review, [courts] focus on whether the determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed." *United States v. Ford*, 882 F.3d 1279, 1283 (10th Cir. 2018) (internal quotation marks omitted). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1988) (quoting *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580-81 (1985)). As to hardship from withholding judicial review, courts ask "whether the challenged action creates a direct and immediate dilemma for the parties." *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012) (quoting *New Mexicans for Bill Richardson*, 64 F.3d at 1499).

The matter is not fit for judicial review. As further discussed *infra*, with respect to the *Pullman* abstention doctrine, material questions of fact and state law exist that require determination prior to this Court's disposition on the merits. The merits of this case rely on "contingent future events," to wit, the state court's ruling in the *Quo Warranto* Action.

Similarly, withholding judicial review at this time works no hardship against either party. Proceeding in state court does not create "a direct and immediate dilemma for the parties," but rather allows the parties to develop the relevant factual record in one cohesive proceeding, rather

than proceeding on parallel tracks that may involve disparate factual findings. To be sure, Griffin will have to defend himself in the *Quo Warranto* Action, but that would be the case no matter what.

Both factors counsel in favor of dismissing on the prudential ripeness doctrine. On this basis, too, the Court denies the Motion and dismisses Griffin's Complaint without prejudice.

C. *Abstention Doctrines*

Even assuming Griffin had standing, his Motion necessarily raises the issue of abstention. Federal courts are of limited jurisdiction, but ordinarily once jurisdiction is established, the courts have a "virtually unflagging obligation…to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Federal courts "should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not refuse to decide a case in deference to the States." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (internal quotation marks, modifications, and citations omitted). The interests of equity, comity, and federalism, however, have caused the courts to recognize "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Id.* at 72.

This Motion, in which Griffin asks this Court to enjoin a state court proceeding, is one such instance. The parties brief each of the following abstention doctrines: the Anti-Injunction Act, *Younger* abstention, *Colorado River* abstention, and *Pullman* abstention. The Court addresses each in turn, concluding that *Pullman* is determinative and that the Court should not enjoin the *Quo Warranto* Action.

a.   Anti-Injunction Act

The Anti-Injunction Act, 28 U.S.C. § 2283, does not apply here.  Section 1983 claims are excepted from the Act's prohibition, *Mitchum v. Foster*, 407 U.S. 225, 242–32 (1972), and Griffin's only non-Section 1983 claim, Count III, was already found by this Court insufficient to sustain a preliminary injunction, (Doc. 30).

b.   *Younger*

In general, the *Younger* doctrine requires abstention when federal proceedings would interfere with certain ongoing state judicial proceedings.[5]  *See, e.g.*, *Sprint Commc'ns*, 571 U.S. at 72–73; *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431–432 (1982).  Griffin argues that *Younger* abstention is not applicable here, however, and this Court agrees.  Griffin first contends that *Younger* is inapplicable because the *Quo Warranto* Action is not a state action.  (Doc. 20) at 10–13.  The Court is not persuaded by this argument, in large part because Griffin argues that the *quo warranto* plaintiffs are acting under color of state law for purposes of this § 1983 action but then makes the reverse argument to prevent abstention. Regardless, Griffin goes on to argue that *Younger* is inappropriate because the *Quo Warranto* Action is neither a state criminal prosecution, a state civil enforcement action akin to a criminal prosecution, nor a civil proceeding involving certain orders that are uniquely in furtherance of the state court's ability to perform its judicial functions.  (Doc. 27) at 25 (citing *Sprint Commc'ns*, 571 U.S. at 79).  This Court agrees that *Younger* is limited to those circumstances, and that the *Quo Warranto* Action does not meet the narrow requirement.

---

[5] The *Younger* doctrine is named for *Younger v. Harris*, 401 U.S. 37 (1971).

Defendants, in turn, urge that *Colorado River* and *Pullman* counsel abstention.[6] (Doc. 28). The Court concludes *Colorado River* does not apply but agrees that *Pullman* advises abstention.

      c.   *Colorado River*

The *Colorado River* abstention doctrine is a sort of catch-all doctrine which "falls within none of the abstention categories" and which is triggered "in situations involving the contemporaneous exercise of concurrent jurisdictions…by state and federal courts." *Colorado River Water Conservation District*, 424 U.S. at 817. The "avoidance of duplicative litigation…is at the core of the *Colorado River* doctrine." *D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013). The doctrine "concerns itself with efficiency and economy." *Id.*

> This sets it apart from the abstention doctrines that preceded it. In the strictest sense, the *Colorado River* doctrine is not an abstention doctrine at all. Rather, it is a judicially crafted doctrine of efficiency that arose to fill a gap in the federal courts' existing inventory of abstention principles. *See Colorado River,* 424 U.S. at 817–18, 96 S.Ct. 1236 (distinguishing between dismissal under abstention doctrines and dismissal "for reasons of wise judicial administration").

*Id.* at 1233 n.13.

Declining to exercise jurisdiction based on the *Colorado River* doctrine is appropriate only in "exceptional circumstances." *Colorado River Water Conservation District*, 424 U.S. at 813. The Supreme Court has set forth a number of factors for a court to consider in determining whether "exceptional circumstances" exist. *Id.* at 818. Before examining these factors, however,

---

[6] Defendants briefed their abstention arguments in their Supplemental Brief, (Doc. 28). Because Griffin chose to file his one reply *before* Defendants filed their Supplemental Brief, he waived the opportunity to respond to the arguments regarding *Colorado River* and *Pullman. See* (Doc. 27) at 1 n.1. While the Court expressly notified the parties of its desire for oral argument on this point, Griffin chose to waive oral argument and rest on his briefs. (Doc. 33).

a federal court "must first determine whether the state and federal proceedings are parallel." *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* "The decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Id.* at 1081–82 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)).

The cases here may appear parallel on the surface, but this Court is not persuaded that they are. It is true that while the state action is ongoing, the cases deal with largely the same fact scenario involving the same parties. But the cases address distinct questions. The state court is asked to adjudicate an issue of state law and power (candidate qualifications) as it relates to the Fourteenth Amendment, and which may include issues arising under the state constitution. This Court is confronted with the issue whether the state proceeding violates due process or whether enforcement of any potential state court order violates the First Amendment. The Fourteenth Amendment and Section 1983 explicitly authorize federal courts to pierce state sovereign immunity to arbitrate questions of constitutional violations. This is additive to and not duplicative of the *quo warranto* action below. For these reasons, *Colorado River* abstention is not appropriate in this case. For reasons explained in the *Pullman* section, below, however, the questions presented to the state court should precede the questions in front of this Court.

d. *Pullman*[7]

The policy underlying *Pullman* abstention is that federal courts should avoid "premature constitutional adjudication…and the risk of rendering advisory opinions."[8] *Caldara v. City of Boulder*, 955 F.3d 1175, 1178 (10th Cir. 2020), *cert. denied sub nom. Caldara v. City of Boulder, Colorado*, 141 S. Ct. 849, 208 L. Ed. 2d 424 (2020) (internal citations omitted). "*Pullman* avoids federal-court error in deciding state-law questions antecedent to federal constitutional issues, by allowing for parties to adjudicate disputes involving unsettled state-law issues in state courts." *Id.* (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997)) (internal quotation marks omitted).

The Tenth Circuit recognizes three requirements which must be met to justify abstention under *Pullman*:

> (1) an uncertain issue of state law underlies the federal constitutional claim; (2) the state issues are amenable to interpretation and such an interpretation obviates the need for or substantially narrows the scope of the constitutional claim; and (3) an incorrect decision of state law by the district court would hinder important state law policies.

*Id.* at 1179.

The Court concludes each of the three requirements are met in this case and that *Pullman* counsels this Court to abstain at least until the state matter is settled. On the first factor, a *quo*

---

[7] With respect to Griffin's claims for declaratory relief, the Court notes that the Declaratory Judgment Act, 28 U.S.C. § 2201(a), is discretionary. *See, e.g.*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) ("We have repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigation."); *see also Pub. Affs. Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) (noting the Declaratory Judgment Act "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so."). The parties did not brief this point. Analysis of the factors outlined in *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994), largely tracks the *Pullman* analysis contained herein and provides another reason for the Court to decline hearing this case at this time.

[8] "*Pullman* abstention" refers to *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941).

*warranto* action brought pursuant to Section Three of the Fourteenth Amendment appears to be a matter of first impression in New Mexico, (Doc. 21) at 15; (Doc. 28) at 5, and there are several uncertain questions where the state court must break new ground.  Does the New Mexico Constitution provide a right to hold office distinct from the First Amendment Right?  Does the New Mexico constitution permit a *quo warranto* removal based on the Fourteenth Amendment?  Does a defendant in such an action bear the burden of showing they are not disqualified under Section Three?  Does a misdemeanor disturbing the peace conviction amount to insurrection in New Mexico's view?

Second, how the state court rules on these issues could narrow or even obviate the instant action.  If the state court were to conclude that Griffin should not be removed from office, for example, there would be no potential constitutional rights question for this Court to resolve.  In this way, the second *Pullman* factor is clearly satisfied and weighs strongly in favor of abstention.

The third *Pullman* factor is also met.  The interests of federalism and comity are salient in this case, and in this Court's discretion the risk of intruding into important state functions is conspicuous.  *Cf.*, *Vinyard v. King*, 655 F.2d 1016, 1020 (10th Cir. 1981) ("The appraisal of whether an erroneous federal court determination of state law would have a disruptive effect on state policies is more discretionary in character than the determination of the clarity of state law[.]").  Here, the lower case involves important questions of state law and state power—who is qualified to hold state office and how those qualifications may be challenged.  On those questions, this Court concludes the state should have the "final word."  *City of Chicago v. Fieldcrest Dairies*, 316 U.S. 168, 171 (1942) (holding *Pullman* abstention appropriate because Illinois has "the final word" on alleged conflict between city ordinance and state statute.).

D. *Issue Preclusion*

Defendants contend Chief Judge Johnson's finding that they are not New Mexico agents

for standing purposes in the *Quo Warranto* Action "bars Griffin from relitigating these issues in

arguing that Defendants are 'state actors' subject to Section 1983 liability." (Doc. 28) at 6.

Griffin argues that Chief Judge Johnson's "standing holding has nothing to do with the issues in

Plaintiff's Motion or Defendants' Opposition, much less does it amount to 'claim preclusion' for

many reasons." (Doc. 27) at 26. Notably, Griffin contends remand is not a decision on the

merits, and that a lack of formal agency in the standing context does not imply that Defendants

do not act under color of state law for § 1983 purposes. *Id.* The Court agrees. The remand order

is not a final adjudication on the merits and thus can have no preclusive effect in this case.

"[I]ssue preclusion bars a party from relitigating an issue once it has suffered an adverse

determination on the issue, even if the issue arises when the party is pursuing or defending

against a different claim." *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 10 F.4th 1016, 1050

(10th Cir. 2021) (quoting *Park Lake Res. Ltd. Liab. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136

(10th Cir. 2004)). Federal courts sitting in federal question jurisdiction apply the federal law of

issue preclusion. *Id.* at 1049. In civil cases, the party asserting issue preclusion must establish

four elements:

> (1) the issue previously decided is identical with the one presented in the action in
>      question,
> (2) the prior action has been finally adjudicated on the merits,
> (3) the party against whom the doctrine is invoked was a party, or in privity with a
>      party, to the prior adjudication, and
> (4) the party against whom the doctrine is raised had a full and fair opportunity to
>      litigate the issue in the prior action.

*Hetronic*, 10 F.4th at 1050 (quoting *Park Lake Res.*, 378 F.3d at 1136).

Griffin was (and is) a party to the *Quo Warranto* Action and had a full and fair opportunity to litigate the agency issue before Chief Judge Johnson.  He does not meaningfully contest otherwise.  Therefore, this Court must decide only the first two questions: 1) Is action "under color of state law" coterminous with Chief Judge Johnson's analysis of the agency relationship between the State of New Mexico and these Defendants?; and 2) Is an order of remand a final adjudication on the merits?

Defendants cite *Matosantos Commercial Corp. v. Applebee's International, Inc.*, 245 F.3d 1203, 1209-10 (10th Cir. 2001), for the proposition that the remand order is an "adjudication on the merits of a jurisdictional issue" and "precludes subsequent relitigation of the same . . . issue."  (Doc. 28) at 7 (quoting *Matosantos*, 245 F.3d at 1209-10).  However, the prior action in *Matosantos* involved a *dismissal* for lack of jurisdiction, not an order of remand.  245 F.3d at 1206.

This case involves remand, not dismissal.  Therefore, *Matosantos* is inapposite. Moreover, "[i]nterlocutory decisions in remanded claims made by the district court prior to remand remain open to review and revision in state court; such orders carry no preclusive effect. When a case is remanded to state court, 'it is only the forum designation that is conclusion.'" *In re C and M Props., L.L.C.*, 563 F.3d 1156, 1166 (quoting *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 647 (2006)).  "[U]nder contemporary preclusion principles, issue preclusion does not attach where 'the party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action.'" *Id.* (cleaned up) (quoting *Kircher*, 547 U.S. at 647).  Issue preclusion also does not apply "in the absence of 'a valid and final judgment' to which resolution of a particular issue was necessary." *Id.* (quoting *Garcia v. Tyson Foods, Inc.*, 534 F.3d 1320, 1330 (10th Cir. 2008)).  "After all, when a claim is remanded to state court,

there can of course be no final judgment or opportunity to appeal such a judgment; by definition, that's been left for the state courts." *Id.*

This case hews to the line of *In re C and M Properties*: the *Quo Warranto* Action was remanded to state court and is, in fact, proceeding. There has been no final judgment and no opportunity to appeal. Accordingly, the prior action has not been fully adjudicated on the merits and issue preclusion does not apply.

E. *Preliminary Injunction*

Even if Griffin had standing to bring this case and no abstention doctrines applied, Griffin's Motion fails on the merits.

The purpose of preliminary injunctive relief is to "preserve the relative positions of the parties" until a hearing or trial on the merits can be held. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits." *Keirnan v. Utah Transit Auth.*, 339 F.3d 1217, 1220 (10th Cir. 2003) (quotation marks and citation omitted). "A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019). "[B]ecause a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir. 2012) (citations omitted); *see also Colorado v. U.S. Envt'l Protection Agency*, 989 F.3d 874, 883 (10th Cir. 2021).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v.*

*Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (construing same as four elements necessary for preliminary injunction).

"[C]ourts have consistently noted that because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements" will be considered. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (quotations omitted). Demonstrating irreparable harm is "not an easy burden to fulfill." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003). Without a showing of irreparable harm, Griffin cannot obtain an injunction. *First Western Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1143 (10th Cir. 2017) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("[E]ven if Plaintiff[] establish[es] a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper.")).

"To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (quoting *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003)). "Regarding irreparable harm, the movant 'must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages.'" *Malamed*, 874 F.3d at 1141 (quoting *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016)).

Griffin argues that "Defendants' actions . . . violate [his] First Amendment rights by restricting his right to run for political office without any legally recognized State justification concerning the continued proper performance of current public duties." (Doc. 20) at 23.  The

Court need not decide whether any "legally recognized State justification" exists for two reasons: first, that is a question for the state court in the *Quo Warranto* Action; and second, that question is secondary to this Court's analysis.  The question for this Court is whether Griffin demonstrated "a significant risk" that he will suffer the claimed harm.  The Court finds he has not.

As discussed *supra*, with respect to standing and the prudential ripeness, Griffin's claimed injury lacks certainty.  Put another way, Griffin's claim rests on the speculative premise that he will lose the *Quo Warranto* Action and an order or other type of process will issue removing him from office and barring him from running in the future.  It may yet happen that Griffin loses the *Quo Warranto* Action.  While the outcome of that case is far from a foregone conclusion, Griffin relies on the further logical leap that loss in state court is tantamount to a constitutional violation.  The Court is not persuaded.  Section Three of the Fourteenth Amendment narrows the First Amendment right to run for office and will require an analysis based on the substance and facts of the state action.

Nonetheless, at this stage, Griffin failed to establish he is *likely* to suffer the claimed irreparable harm.  *See Winter*, 555 U.S. at 22 (reiterating plaintiff must show a likelihood of irreparable harm).

Griffin also seems to argue that defending himself in the *Quo Warranto* Action constitutes an irreparable harm because he must, allegedly, prove a negative.  (Doc. 20) at 23. Griffin cites no case, and the Court is aware of no authority, supporting the proposition that defending oneself in a lawsuit constitutes irreparable harm, that is, "harm that cannot be compensated after the fact by money damages." *Malamed*, 874 F.3d at 1141 (quotation omitted).

Indeed, with respect to Griffin's second claim that his right to due process will be violated by defending himself, this claim is self-defeating.  While Griffin claims he bears the burden of proving a negative, this remains an open question in the *Quo Warranto* Action.  More to the point, it strains credulity to suggest that going through the process of a lawsuit constitutes the constitutional denial of due process—certainly not while the process is ongoing.

Finally, to the extent Griffin relies on the Amnesty Act of 1872 for any purpose, the Court previously disposed of this argument.  *See* (Doc. 30).

For these reasons, the Court finds Griffin failed to establish a likelihood of irreparable harm.  Because the likelihood of irreparable harm is the most critical factor to consider at the preliminary injunction stage, and Griffin failed to establish this element, the Court need not consider the other elements necessary for a preliminary injunction.  Therefore, the Court denies Griffin's Motion.

III.    CONCLUSION

For the reasons explained herein, the Court denies Plaintiff Couy Griffin's Motion for Preliminary Injunction (Doc. 20) and dismisses this case without prejudice.  Having resolved this matter on the briefs, the Court vacates the June 30, 2022, hearing.

IT IS SO ORDERED.

UNITED STATES DISTRICT JUDGE